IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ESTES,<br><br>                    Plaintiff,<br><br>     vs.<br><br><br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>              Defendant. | CASE NO.  1:04-cv-06135 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |

Plaintiff Elizabeth Estes ("claimant" or "plaintiff") seeks  judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on August 19, 2004 (Doc. 1), and her opening brief on June 9, 2005.  (Doc. 16).  The Commissioner filed her opposition to the appeal on July 12, 2005 (Doc. 18). Claimant filed a reply brief on July 27, 2005. (Doc 19).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge.  (Docs. 6 and 8).  By an order dated May 27, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 15).

## JURISDICTION

On February 10, 1999, claimant filed her first application for SSI benefits, alleging an inability to work due to early stages of emphysema, kidney and bladder problems, and depression

1

and stress. (Administrative Record ("AR") 56, 65). This application was denied at the reconsideration stage on March 16, 2001, and claimant did not file an appeal. (AR 35-39).[1] Eight months later, on November 19, 2001, claimant again applied for SSI benefits, alleging impairments of kidney, back and lung problems leaving her unable to work since October 27, 2001. (AR 119).[2] Claimant's application was denied initially and on reconsideration and, on April 17, 2003, Administrative Law Judge ("ALJ") William C. Thompson, Jr. found that claimant was not disabled. (AR 15-19).[3] The Appeals Council denied claimant's request for review on June 22, 2004 (AR 5-7), leaving the ALJ's decision of April 17, 2003, as the final decision of the Commissioner. On August 19, 2004, within sixty days of the Appeals Council decision, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on August 15, 1945, making her 57 years old at the time of ALJ

---

[1] The ALJ made no mention of claimant's prior disability application in his written decision. (AR 15-19). In contrast, and in a Disability Report filed with her second application, claimant herself stated that "I applied for disability 2 years ago [and] was denied." (AR 126).

[2] In his decision, the ALJ stated that claimant's application alleged an inability to work "due to emphysema, bladder problems, kidney problems, depression and stress." (AR 15). However, these were the precise impairments listed in claimant's *first* disability application, not those (though similar) listed in her *second* application. Compare AR 65 (Disability Report associated with first application) with AR 119 (Disability Report associated with second application). Likewise, the Commissioner, in her brief, incorrectly cites to claimant's *first* Disability Report for the litany of impairments relevant to her *second* application. (Doc. 18 at p. 1). Claimant's own counsel presents yet a third procedural and factual background in the opening brief, one involving only a single disability application, with no subsequent application, and with the ALJ's decision having stemmed from the initial application itself. (Doc. 16 at p. 2). The confusion is perhaps understandable given that the Administrative Record, as compiled, is almost random. For example, immediately following claimant's second, November 19, 2001 SSI application (AR 60-63) in the Administrative Record is a Disability Report dated at the time of her first application (AR 64-73). The Disability Report for claimant's second application does not appear until much later in the record, and in the midst of reports that would appear to relate to her first application and reconsiderations thereof. (AR 118-27).

[3] The date stamp on ALJ Thompson's decision is "APR 17, 2002." (AR 19). However, it is evident from the record that the correct year was 2003. First, claimant's Request for Hearing by Administrative Law Judge is dated October 10, 2002 (AR 49), so the hearing itself had to have occurred sometime after that date, and not earlier in 2002. Second, the transcript of the evidentiary hearing underlying ALJ's Thompson decision is dated February 5, 2003 (AR 377), consistent with the original scheduling order for the hearing (AR 50), so the decision itself could not have been issued in the preceding year. Finally, the Notice of Appeals Council Action denying claimant's request for review explicitly stated that review was sought from the ALJ's "decision dated April 17, 2003." (AR 5).

Thompson's decision. (AR 15, 60). At the administrative hearing, claimant testified that she had obtained a GED in 1981 (AR 382) and that she had training and certification as a CNA (AR 384-85). Claimant testified that, in 1990, she worked as a medical assistant in a doctor's office for six months, during which time she settled patients into examination rooms, took their vital signs and drew blood samples. (AR 410-11). Claimant last worked in November, 2001, at which time she was a CNA at a hospital in Ceres, California. (AR 384). It was while lifting a patient out of a chair, during this job, that claimant allegedly pulled her left shoulder, though a Workers' Compensation claim was never filed. (AR 389).

As to her daily life and activities, claimant testified that she rents a room in a house. (AR 398). According to claimant, a housekeeper attends to most chores around the home, although claimant does spread her bed (with her right arm) and does some shopping and driving. (AR 398, 401). Claimant testified that she attends to her own personal care (e.g., baths and hair care), that she can walk a couple of blocks before experiencing shortness of breath, and that she has no problem sitting or standing. (AR 401-02). According to claimant, she can only lift weight with her right hand and, although her right shoulder is uninjured, her right-handed lifting capacity is five pounds. (AR 402-03). Finally, claimant testified that she enjoys reading and watching television. (AR 399). On examination by her attorney, claimant clarified that she could stand, but not for eight hours as she would experience shortness of breath and become dizzy after as little as ten minutes. (AR 405, 409). Claimant also stated that, because her bladder had dropped, she had an urgency to urinate, but did not do so frequently. (AR 407). When asked by her attorney, claimant clarified that while she did watch television and read, she had problems concentrating and therefore could only do so for five minutes before she stopped paying attention. (AR 407-08).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such

severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past.  If claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

1    1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity (SGA) since she filed her application." (AR 28).

**Step Two**

At step two, the ALJ determined that the claimant has a "severe" impairment insofar as she suffers from "chronic obstructive pulmonary disease and depression." (AR 18).

**Step Three**

The ALJ next considered whether claimant's impairments, while severe, fit within the impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1 (Listing of Impairments). Upon making the comparison, the ALJ concluded that claimant "does not have an impairment or combination of impairments listed in, or medically equal" to those contained in the Listing of Impairments. (AR 18).

**Step Four**

The ALJ found that claimant had past relevant work as a medical assistant and as a certified nurse's assistant. (AR 19). Relying, in part, upon the testimony of a vocational expert, the ALJ determined that claimant could perform her past relevant work as a medical assistant. (AR 19). Accordingly, the ALJ concluded that claimant was not under a disability as defined by the Social Security Act. (AR 19).

**Step Five**

Having found that claimant could perform her past relevant work as a medical assistant, the ALJ did not reach step five of the sequential analysis, namely, whether claimant was able to perform other work in the national economy in view of her age, education and work experience. (See AR 19).

///
///
///

**ISSUES**

Claimant's Opening Brief raised the following four issues for consideration[4]:

A. Whether the ALJ erred in considering and developing claimant's mental health record.

B. Whether the ALJ erred in his application of a vocational expert's opinion as to claimant's ability to perform her past relevant work.

C. Whether the rationale for the ALJ's decision lacks sufficiency under the law.

D. Whether the ALJ erred in rejecting the credibility of claimant's subjective statements.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Mental Health Record**

Claimant argues that, having found her depression to be severe, the ALJ erred in failing to note or find any mental work limitation. (Doc. 16 at p. 3). The medical evidence, according to claimant, supports the imposition of "severe mental limits (including the ability to do complex tasks, work with people, and handle stress.)" (Id.)

The problem confronted by this Court in addressing claimant's argument is that the ALJ did not follow the special evaluation technique applicable to mental impairments. The special technique requires the ALJ to first evaluate claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable impairment. If one exists, the ALJ must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment. 20 C.F.R. § 404.1520a(b)(1)(Disability Insurance Benefits)("DIB"); 20 C.F.R. § 416.920a(b)(1)(SSI). Importantly, the ALJ must then *rate* the degree of functional limitation resulting from the impairments. 20 C.F.R. § 404.1520a(b)(2)(DIB); 20 C.F.R. § 416.920(a)(b)(2)(SSI). This *rating* process covers four broad functional limitation areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence or pace and

---

[4] A fifth claim of error - that the ALJ was generally biased - was abandoned by claimant in her reply brief. (Compare Doc. 16 at p. 5 with Doc. 19 at p. 3).

(4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3)(DIB); 20 C.F.R. § 416.920a(c)(3)(SSI).  For the first three functional areas (daily living, social functioning, concentration), a five-point scale is used: none, mild, moderate, marked, and extreme.  In rating the fourth functional area (episodes of decompensation), a four-point scale is used: none, one or two, three, four or more.  20 C.F.R. 404.1520a(c)4)(DIB); 20 C.F.R. § 416.920a(c)(4)(SSI).  The aforementioned rating process is necessary because, in performing step three of the sequential analysis, the ratings come into play in the ALJ's determination as to whether a severe mental impairment is or is not a "Listed" impairment.  See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(discussing mental impairment ratings as used in the Listings).  Critically, the ALJ must *document* application of the special evaluation technique applicable to mental impairments. 20 C.F.R. § 404.1520a(e)(DIB); 20 C.F.R. § 416.920a(e)(SSI)("At the administrative law judge hearing . . . we will document application of the technique in the decision"); 20 C.F.R. § 416.920(a)(e)(2) ("The decision must include a specific finding as to the degree of limitation in each of the functional areas").  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)(regulations "require[] the ALJ's written decision to make a specific finding as to the degree of limitations in each functional area").

Here, while the ALJ found that claimant's depression was "severe" (AR 17), his decision is otherwise devoid of the required functional analysis.  There was no grading of claimant's abilities in any of the four functional areas, and no documented application of those grades to the Listings. Consequently, claimant's objection that the ALJ failed to "clarify" the mental impairment limitations is a valid one.  (Doc. 16 at p. 3).  An ALJ cannot simply find a claimant's mental impairment "severe" as a favor or "accommodation" to claimant, as the government suggests (Doc. 18 at p. 13) while disregarding the special evaluation technique.  See Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005)("where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form], append it to the decision, or incorporate its mode of analysis into his findings and conclusions.  Failure to do

so requires remand"); Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000)(same).[5]  Accordingly, this Court finds that remand is required for a proper and complete application of the special evaluation technique applicable to mental impairments.

**B.  ALJ's Application of Vocational Expert Testimony**

At step four of the sequential analysis - whether claimant could perform her past relevant work as a medical assistant - the ALJ concluded that claimant could "stand and walk for 6 hours in an 8-hour workday." (AR 18 and 19).  This conclusion was supported by several consultative exams and residual functional capacity assessments: (1) on February 10, 2002, Usman Ali, M.D. performed an internal medical evaluation of claimant and concluded that she was "able to stand and walk with breaks every two hours for about six hours."  (AR 287);[6] (2) on May 7, 2002, a medical consultant completed a physical residual functional capacity assessment in which it was stated that claimant could stand and/or walk about 6 hours in an 8-hour workday (AR 324); and (3) on September 25, 2002, Esther Cistone, M.D., completed a physical residual functional capacity assessment in which she stated that claimant could stand and/or walk about 6 hours in an 8-hour workday (AR 332).

Even though the ALJ accepted the findings that claimant could stand/walk for six hours in an eight-hour workday (AR 18), he inexplicably posed a considerably more open ended query to Vocational Expert ("VE") Stephen Schmidt, one that assumed claimant was capable of standing and walking for six *or more* hours in a day: "Mr. Schmidt, I'd like for you to consider for me please, a 57 year old individual . . . [who is] capable of standing and walking in combination for six or more

---

[5] The requirement of appending a Psychiatric Review Technique Form to the ALJ's decision was eliminated by amendments to the regulations that became effective on September 20, 2000. Mersman, 161 F. Supp. 2d at 1086. However, the ALJ's written decision still must make specific findings as to the degree of limitations in each functional area described in 20 C.F.R. § 404.1520a(c) and its SSI equivalent, section 416.920a(c). Mersman, 161 F. Supp. at 1086. See Lindsay v. Barnhart, 370 F. Supp. 2d 1036, 1042-43, 1045 (C.D. Cal. 2005)(remand required because, inter alia, ALJ "failed to assess plaintiff's mental impairment, as required by 20 C.F.R. § 404.1520a, and failed to rate the degree of functional loss resulting from plaintiff's mental impairment by making specific findings about plaintiff's daily activities, social functioning, concentration, persistence, or pace, and episodes of decompensation").

[6] When discussing Dr. Ali's report, the ALJ incorrectly cited to Exhibit 5F in the Administrative Record. (AR 16). Dr. Ali's report is contained at Exhibit 15F in the record. (AR 284-88). In contrast, Exhibit 5F pertains to a report prepared on July 1, 1999 by a Dr. Fonte (AR 175-182), presumably in connection with claimant's first disability application. Interestingly, the report by Dr. Fonte found no exertional limitation in terms of standing and walking. (AR 176).

hours in a day." (AR 412). Given this hypothetical, the VE concluded that claimant could perform the light exertional job of medical assistant, her prior relevant work. (AR 412).

On cross-examination, however, the attorney for claimant clarified the distinction between a six hour stand/walk limitation and the non-limitation of being able to stand and walk for more than six hours, i.e., throughout the work day. So clarified, the vocational expert explicitly testified that a person with a six hour stand/walk limitation could *not* perform work as medical assistant (claimant's past relevant work):

> Atty: I need to check with the vocational expert, your understanding of the standing and walking limitation, if any?
>
> VE: None.
>
> Atty: No.
>
> VE: Six or more, per day.
>
> Atty: I heard the or more, okay. Does that tell you precisely of how many hours it would be on the feet?
>
> VE: Well no, but my assumption, my interpretation of it is that if we're talking a standard eight-hour day, and we're talking the ability to stand in excess of six hours. We're talking the ability to essentially stand throughout the workday.
>
> Atty: Okay, thank you. If we take the first hypothetical, and instead say that the standing and walking in combination, is six hours a day out of eight?
>
> VE: Standing and walking in combination?
>
> Atty: A total of six hours, at either standing or walking, but nor more than six hours in eight. Would she be able to do the past relevant work?
>
> VE: No.

(AR 414).

The error here is patent. Consistent with claimant's medical examination and residual functional capacity reports, the ALJ himself found claimant exertionally limited to "stand[ing] and walk[ing] for 6 hours in an 8-hour workday." (AR 18 and 19). The VE, as well, explicitly stated that such a limitation would preclude work as a medical assistant. (AR 414). Notwithstanding the VE's testimony and, importantly, the clarification of his testimony by claimant's attorney, the ALJ inexplicably found the VE to have concluded that a person with "the limitations noted above" (i.e., a

six hour stand/walk limitation) could work as a medical assistant. (AR 18). As this is not what the VE stated, this Court must remand for reconsideration. Ellison v. Sullivan, 921 F.2d 816, 822 (8th Cir. 1990)("an ALJ's misapplication of a vocational expert's testimony warrant[s] reversal of a disability determination").[7]

**C. Sufficiency of Rationale for the ALJ's Decision**

This Court need not address whether there were other limitations that either existed or were insufficiently considered by the ALJ, the third argument asserted claimant's brief (Doc. 16 at pp. 3-4), because a preliminary consideration in the sequential analysis remains unfulfilled, namely, claimant's mental limitations and the ALJ's regulatory obligation to complete, append or recreate a psychiatric review of claimant's condition.

**D. Rejection of Claimant's Credibility**

Claimant asserts that the ALJ failed to give specific, convincing reasons for rejecting her subjective complaints. (Doc. 16 at p. 5). On this issue, claimant is unfounded.

The ALJ reviewed claimant's medical history from the time she filed her second disability application to the time of his decision. (AR 15-17). In doing so, he compared and contrasted that history against the subjective complaints asserted by claimant, and he repeatedly noted inconsistencies between the medical reports and claimant's observations: (1) While claimant testified to "shortness of breath," (AR 392, 402), the ALJ noted a medical report on the same issue which concluded that she gave "variable effort" and had "poor test reproducibility" (AR 16 and 17, 308); (2) While claimant testified to a bad left shoulder (AR 389-90), the ALJ noted that "no physician ordered an x-ray or MRI scan of the claimant's left shoulder [which] suggests that no treating physician found the claimant's impairment severe enough to warrant such a procedure" (AR 18); (3) While claimant testified to being "dizzy" when first standing (AR 409), the ALJ noted the lack of frequency of such complaints in claimant's treatment records (AR 18). In sum, and in making his credibility assessment, the ALJ clearly did assess and explain the lack of consistency of claimant's

---

[7] This Court need not reach the issue of claimant's alleged "reaching" limitation (see Doc. 16 at p. 4 and Doc. 18 at pp. 15-17) because it was raised in the context of claimant's past relevant work as a medical assistant, a context that is irrelevant given the VE's testimony that a six hour stand/walk limitation precludes such work.

complaints, the lack of medical evidence that might support them and the lack of claimant's treatment history, all as contemplated by SSR 96-7p. This Court therefore finds no error in this regard.

## **CONCLUSION**

Claimant submits that the ALJ's errors should result in this Court either reversing the ALJ's decision or remanding the case. (Doc. 16 at p. 7). The Court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Id. Remand is appropriate when additional administrative proceedings could remedy defects. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development is necessary for a proper determination to be made.

First, proper application of the special evaluation technique applicable to mental impairments must be performed by the ALJ and must be used wherever appropriate in the sequential analysis. Second, and should vocational expert testimony be taken at either step four or five of the sequential analysis, the ALJ should take care to properly apply the expert's assessments.

For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny claimant disability benefits was not supported by substantial evidence in the record and was not based upon the proper legal standards.

Accordingly, it IS ORDERED that

1. Claimant's social security complaint IS GRANTED;

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant's impairments are so severe as to preclude substantial gainful activity, 20 C.F.R. §§ 404.1520(d)(DIB), 416.920(d)(SSI); 20 C.F.R. § 404 Subpt. P App. 1; whether claimant is capable of performing work she has performed in the past, 20 C.F.R. §§ 404.1520(f)(DIB), 416.920(f)(SSI); and, if required, whether on the basis of claimant's age, education, work experience, and residual functional capacity, claimant can perform any other gainful and substantial work within the economy, 20 C.F.R.§§ 404.1520(g)(DIB), 416.920(g); and

3.      Judgment BE ENTERED for claimant Elizabeth Estes and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

Dated:    **March 15, 2006**                                        **/s/ Theresa A. Goldner**
**j6eb3d**                                                                    UNITED STATES MAGISTRATE JUDGE